10769

STATE v. RANDALL

(110 S. E. 123)

1. ARREST—ASSAULT AND BATTERY—HOMICIDE—OFFICER CANNOT MAKE ARREST WITHOUT WARRANT FOR OFFENSE NOT COMMITTED IN HIS PRESENCE.—An officer has no right to arrest a citizen for an offense committed out of his presence, without a warrant, and such citizen has a right to resist such arrest with whatever force is necessary, and, if the officer tries to arrest him by force, the officer is guilty of an assault, and if the person sought to be arrested is killed, the officer cannot avail himself of the plea of self-defense.

2. HOMICIDE—INSTRUCTION AS TO DEFENDANT'S RIGHT OF SELF-DEFENSE, THOUGH AGGRESSOR IN FIRST INSTANCE, HELD PROPERLY REFUSED.— In homicide prosecution, where defendant's own testimony showed that he was at fault throughout the entire affair, and that the killing was unnecessary, refusal of instruction that, even if defendant was aggressor in first intance the use of disproportionate force by deceased would remit defendant to right of self-defense, *held* proper.

3. CRIMINAL LAW—CHARGE CONSIDERED AS A WHOLE.—A charge must be considered as a whole.

Before PEURIFOY, J., Aiken, ———, 1920.   Affirmed.

A. J. Randall indicted for the murder of Minnie Keenan (a man) and upon conviction of manslaughter appeals.

The exceptions follow:

*First.*   The defendant excepts to the charge of his Honor, the presiding Judge, in that:

(a)   His Honor erred in charging the jury as follows:

"I charge you further, that no citizen can be arrested by an officer for an offense committed out of his presence, without a warrant, and I charge you that such citizen has a right to refuse such arrest, and use such force as is necessary; and if the officer tries to arrest the citizen under those circumstances and uses any force, he would be guilty of an assault, and, as I have stated, the person would have the right to defend himself against the officer and use such force as is necessary, and if such officer under such circumstances had killed the citizen he could not avail himself of the plea of self-defense.

"I charge you, further, that if an officer should undertake to arrest another, without a warrant in his actual possession, but should have the warrant at some nearby place where it could be had within a reasonable time, then where the officer is known to the person who is sought to be arrested, then that person should first submit to the arrest, where the officer is known to him, and then it would be the duty of the officer to get the warrant, and show the person what he was charged with and put it where he could peruse it.

"Foreman:   Right there; do you mean that the warrant should be written and laying somewhere?

"Court:   I hold that there should be a warrant, but that the officer has—

"Foreman:   Like the case in a buggy?

"Court:   Then it would be the duty of the person to submit to the arrest, and it would be the duty of the officer to get the warrant and read it to him, and if he refuses, then

the person could refuse to be arrested, and any conduct of the officer after that would be a wrongful act, and if he should shoot him and kill him, then he could not avail himself of the plea of self-defense."

(b)   That his Honor erred in refusing to charge defendant's sixth request, as follows: ·

"While it is true, as just stated, that one who brings a difficulty on cannot plead self-defense, and while it is further true that a police officer who persists in arresting, or making an attempt to arrest, without a warrant, for an offense not committed within his view, becomes a trespasser, still the jury is charged that there is another well-known principle of the law to the effect that where the attempted arrest is made by an officer who is known to be an officer by the person about to be arrested—that the person being arrested cannot demand the production of the warrant until he has actually submitted to the authority of the known officer.   After submitting to the authority of the known officer the person in question may then demand the production of the warrant, and if the officer is either not in possession of a warrant or fails to produce it, then his act from that moment forward will be a trespass, and he will be placed in the wrong in any altercation that follows, but up to the point when the production of a warrant is demanded, he will not be considered in the wrong, under the law. Hence, to apply to this case, even if the jury should find that Randall was attempting, without a warrant, to arrest Keenan, still, if they find that Keenan refused to submit to the arrest while knowing that Randall was an officer, and that Keenan never demanded the production of a warrant, then the jury is charged that Keenan, under those circumstances, failed to do any act to make Randall the aggressor, and to put him in the wrong, and under these circumstances, Randall would not be deemed to have lost his right of self-defense, and his plea of self-defense would be available to .

him in this case, if the jury finds it is made out in the other particulars required by law."

(c)   That his Honor erred in refusing to charge defendant's request 6a as follows:   "If a known officer attempts an arrest without a warrant, the citizen must submit to the arrest, and may not resist until he has demanded the production of a warrant. If the party being arrested fails to demand the production of a warrant, his resistance and attempt to escape are unlawful, and the known officer until the production of the warrant is demanded, would not be in the wrong in continuing his attempt to arrest"—in that the effect of the foregoing refusal to charge, and of the charge as made, was erroneously to make a known police officer, without a warrant, an aggressor and a trespasser, and to put him in the wrong even though the production of a warrant was never demanded; and, further, erroneously to give a citizen the absolute right to resist a known police officer without demanding the production of a warrant and without even knowing that the police officer has no warrant. Whereas, it is submitted to the contrary that the law is that the citizen must submit to the attempted arrest before he may demand the production of a warrant, and that the citizen who never demands the production of a warrant in case of an attempted arrest by a known officer, but nevertheless resists arrest, is always in the wrong, while the officer is not a trespasser until after the production of the warrant is demanded.

*Second.*   That his Honor erred in refusing to charge the defendant's seventh request, which read as follows: "Seventh.   Even should the jury find that Randall was attempting an illegal arrest, but that Keenan knew him to be an officer of the law and resisted the arrest and that Keenan's resistance was made with the use of such a degree of force and violence as to be disproportionate to the force that was being used by Randall, then, under such circumstances, the jury is charged as a matter of law, that, even

should they go to the extent of finding that Randall was, in the first instance, an unlawful aggressor, the use of .disproportionate force by Keenan would remit Randall to his right of self-defense, and if he acted in other particulars, required by law, in such manner as to make out his plea of self-defense, then he would be entitled to have the same sustained and to be acquitted"—upon the ground that the foregoing request states a sound proposition of law applicable to the facts of this case, and that its refusal was highly prejudicial to the defendant; it being submitted that the law is that, where one, especially a known police officer, is resisted (even though he were initially in the wrong) with force disproportionate to the force that he was exercising, he would be remitted to his right of self-defense.

*Third.* That his Honor erred in charging the jury: "If there is any reasonably safe way to prevent the taking of human life, then the obligation is due on the defendant to avail himself of that means"—in that it is submitted that the rule laid down placed upon the defendant the duty of actively seeking a "way to prevent the taking of human life," and placed upon him an obligation greater than the settled legal rule which requires only that the difficulty must be avoided if there be a probable means of escape open to the defendant.

*Messrs. Hendersons* and *John F. Williams,* for appellant, cite: *Where arrest is made by a known officer the person arrested may demand production of a warrant after he has submitted to arrest, but not before:* 104 S. C., 359; 61 Am. Dec., 160 (Note); 72 S. C., 107; 67 Am. St. Rep., 651; 9 Coke, 61. *In resisting an unlawful arrest, the person arrested can only use force proportionate to that used by the officer:* 40 S. E., 718 (Ga.); 21 Cyc., 803; 177 U. S., 535; 63 S. E., 922 (Ga.); 38 Am. Rep., 645 (Tex.); 69 S. E., 463 (W. Va.). *Judge was in error in his charge putting the obligation on defendant to use any*

*reasonable safe way to prevent taking life*: 114 S. C., 241.

*Messrs. R. L. Gunter, Solicitor,* and *J. B. Salley,* for respondent, cite: *Rule as to arrest without warrant*: 70 S. C., 72; 53 S. C., 152; 104 S. C., 359; 9 S. C., 309. *Amount of force to be used in repelling assault*: 111 S. C., 113.

December 6, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The defendant was tried for murder before Judge Peurifoy and a jury, convicted of manslaughter and sentenced, and appeals, and by three exceptions alleges error. These exceptions complain of error on the part of his Honor in his charge to the jury, and in refusing to charge certain requests asked for by the defendant.

Exception 1 complains of error in charge to the jury and refusal to charge defendant's request, 6 and 6A, on the subject of the right of a known officer to make an arrest without warrant, and the right of a citizen to resist an unlawful arrest. We see no error as complained of. His Honor's charge along this line was correct and in conformity with the principles of law as announced by this Court in numerous decisions. *Percival v. Bailey,* 70 S. C., 72; 49 S. E., 7, and authorities therein cited. *State v. Davis,* 53 S. C., 152; 31 S. E., 62; 69 Am. St. Rep., 845. Defendant by his own testimony shows that he did not have a warrant. He testified that—

"The mayor told me when I next saw Keenan to ask him for bond, and if he did not put up bond to come and get warrant for him. * * * I went to Keenan and called him off; he had been sitting on a bench in front of Johnson's store; I said to him, 'The mayor has asked me to come to you and ask you to put up bond and I don't want to arrest you, but you are going to force me to.' "

2    The whole evidence of the defendant shows that the killing was unnecessary; defendant was at fault throughout the whole affair, and was the aggressor acting without authority of law.

3    The second exception is overruled as being without merit under the facts developed in the case, and under the authority of *State v. Campbell,* 111 S. C., 112; 96 S. E., 543, the charge must be considered as a whole, and, being so considered, is free of error·complained of. All exceptions are overruled and judgment affirmed.