18327

Boyd O. PROSSER, Respondent, v. M. O. PARSONS, Appellant
(141 S. E. (2d) 342)

494

*Messrs. Smith & Moore* and *C. C. Grimes, Jr.,* of George-town, and *Daniel R. McLeod, Attorney General,* and *Julian L. Johnson, Assistant Attorney General,* of Columbia, *for Appellant,*

*A. L. King, Esq.,* of Georgetown, *for Respondent.*

April 2, 1965.

TAYLOR, Chief Justice.

The plaintiff, Boyd O. Prosser, recovered judgment for actual damages against the defendant, M. O. Parsons, during the January Term of Common Pleas Court for Georgetown County. The complaint sets forth three causes of action: One for false imprisonment, a second for malicious prosecution, and a third for conversion of plaintiff's automobile. Timely motions for nonsuit, directed verdict, judgment *n. o. v.* or in the alternative for a new trial were made by defendant and denied by the trial Judge. This appeal followed.

In substance the first cause of action of the complaint alleges that on October 31, 1962, plaintiff, while parked and sitting in his automobile on the side of a highway, was required by the defendant, while armed with a pistol, to get out of plaintiff's automobile and enter a vehicle then under the control of defendant, thereby falsely imprisoning and depriving plaintiff of his liberty for a period of time.

It is alleged in the second cause of action that defendant, with malicious intent, did cause a magistrate for Georgetown

County to issue a warrant and thereby initiated criminal proceedings against plaintiff. The warrant was presented to a Grand Jury which returned a "No Bill." It is then alleged that defendant caused a second warrant to be issued based upon identical facts, which upon presentment to the Grand Jury was also returned "No Bill."

In the third cause of action, it is alleged that defendant, while armed with a pistol, required plaintiff to surrender up his 1958 Ford, thereby depriving plaintiff of the use of said automobile for a period of 113 days.

The answer of defendant consisted of a general denial and as a defense to the first cause of action, alleged defendant was a duly appointed Game Warden and engaged in the performance of his official duties on October 31, 1962; that plaintiff and another were seen in the act of hunting from plaintiff's automobile with the aid of flashlights, guns and other night hunting equipment; and it was under these circumstances that defendant placed plaintiff under arrest.

As to the second cause of action, it is alleged that defendant acted in good faith and that prior to serving the warrant, the circumstances connected with the transaction were discussed with the Circuit Solicitor who advised him to have the second warrant issued.

As to the third cause of action, defendant denies all allegations except that he did take from plaintiff his 1958 Ford automobile.

In determining whether the trial Judge erred in refusing to grant defendant's motions for a nonsuit and a directed verdict, we must review the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to plaintiff.

It is undisputed that plaintiff was arrested by defendant at approximately 1:30 A. M. on October 31, 1962, and taken to the Georgetown jail. That morning defendant went to a Magistrate and procured a warrant charging plaintiff with violating Section 28-302, Code of Laws of South Carolina,

which reads as follows: "There shall be no night hunting in this State except for raccons, opossums, foxes, mink and skunk, and these may not be hunted with lights, commonly known as "head lights," attached to the head or otherwise attached to the body. The penalty for any violation of the section shall be a fine not exceeding two hundred dollars or imprisonment not exceeding sixty days."

Plaintiff contends that his arrest was unlawful. He testified that after leaving work at 11 P. M. from the International Paper Co. plant at Georgetown, S. C., he, together with one Jerry Lambert, proceeded toward Pawley's Island to see if the fishing was good. However, before reaching their intended destination it was decided to return to Georgetown. As he proceeded south on U. S. 17, plaintiff noticed a car go out of control rounding a curve and turned around to investigate. The car appearing to be all right, plaintiff proceeded north on U. S. 17 until he reached a convenient place to turn around. After once again proceeding in a southerly direction, he stopped at a litter deposit beside the road to dump some trash. Shortly thereafter, his car was blocked by automobiles belonging to the Game Wardens. His arrest then followed. Plaintiff admitted that he had 2 flashlights in the car, one of the type that is attached to the car's cigarette lighter and operates from the car's battery, and that as he drove up and down the highway, Lambert, on occasion, would shine the lights out of the car. Plaintiff admitted having with him a shotgun loaded with buckshot.

The essence of the tort of false imprisonment consists in depriving plaintiff of his liberty without lawful justification, and if the restraint or imprisonment complained of is lawful, the action fails. *Thomas v. Colonial Stores, Inc.,* 236 S. C. 95, 113 S. E. (2d) 337. The legality of an arrest without warrant does not depend on the final results of the charge on which the arrest was made. 5 Am. Jur. (2d), Arrest, Section 22.

The defendant here is a Game Warden appointed by the South Carolina Wildlife Resources Commission as provided

by Chapter 2, Article 2 of Title 28, Code of Laws of South Carolina, 1962. Section 28-140 of the Code states that Game Wardens "shall possess and exercise all of the power and authorities held and exercised by the constable at common law and under the statutes of this State."

At common law sheriffs, constables, and other peace officers had the power and authority to arrest without warrant felons or persons reasonably suspected of having committed a felony and also those who had committed a misdemeanor in his presence which amounted to a breach of the peace. 5 Am. Jur. (2d), Arrest, Sec. 24, et seq. See *State v. Williams,* 237 S. C. 252, 116 S. E. (2d) 858. By virtue of Sec. 17-253, Code of 1962, this principle is now applicable to any violation of the criminal laws of this State committed within the view of such an officer. A Game Warden, therefore, has the power and authority to arrest any person without warrant for an offense committed in his presence.

Violation of Section 28-302 of the Code is a misdemeanor; therefore, under our decisions, in order for defendant to have lawfully arrested plaintiff, the alleged violation of the above section of the Code must have occurred in the presence of defendant. See *Percival v. Bailey,* 70 S. C. 72, 49 S. E. 7; *State v. Randall,* 118 S. C. 158, 110 S. E. 123; *Shipman v. Du Pre,* 222 S. C. 475, 73 S. E. (2d) 716; *State v.Williams,* 237 S. C. 252, 116 S. E. (2d) 858.

Testimony on behalf of defendant revealed that, as the result of information, approximately ten State Game Wardens were positioned along U. S. Highway 17 in Georgetown County where deer were known to abound. At approximately 1 :30 A. M., plaintiff's car was observed by some of the officers, but not defendant, traveling at a slow rate of speed to and fro along the highway with a light shining therefrom at angles into the woods. At one time when another car approached, plaintiff's car pulled over and slowed down and the occupants stopped shining the lights; however, once the other automobile had passed, they again started to

shine the lights into the woods. The Game Wardens had two-way radios and were keeping each other informed of what occurred. Defendant, upon receiving certain information over his radio, left his stake-out position and proceeded in the direction of plaintiff. When he arrived, plaintiff parked his car on the side of the highway and was observed to have a shotgun loaded with buckshot, together with 2 flashlights, one of the type with a wire attached to the cigarette lighter.

Defendant testified that he arrested plaintiff for night hunting on the basis of the information he had received from the other Game Wardens together with what information he had personally observed.

"If an officer does not know of the acts constituting an offense, that offense is not being committed in his presence in respect of the justification of an arrest without warrant. The acts must become known to the officer, at the time of their commission, through his sensory perception, and he must infer that they constitute an offense." 4 Am. Jur. (2d), Arrest, Section 31, p. 721, citing in support *State v. Williams, supra,* 237 S. C. 252, 116 S. E. (2d) 858.

It cannot be said that defendant personally observed plaintiff violate Section 28-302 of the Code by hunting in the nighttime. The word "hunting" as used in the above Code Section prohibiting "night hunting" means the act of trying to find, seek, obtain, pursue or diligently search for game. Defendant only observed plaintiff with the equipment usually used for night hunting but did not personally observe plaintiff hunting. However, it is undisputed that approximately ten Game Wardens were working together in the same general area, keeping each other informed by radio. Under these circumstances, an act taking place within the view of one officer was in legal effect within the view of the other cooperating officers and, if the combination of acts committed within the view of the cooperating officers furnished probable cause for believing that the offense of night hunting was being committed in their presence, then

the arrest was lawful. Compare *State v. Pokini,* 45 Haw. 295, 367 P. (2d) 499; *United States v. Bianco,* 3rd Cir., 189 F. (2d) 716; *United States v. Romero,* 2nd Cir., 249 F. (2d) 371. We are of the opinion that the only reasonable inference from the testimony is that the acts of the plaintiff, committed in the presence of the officers, reasonably appeared to constitute a violation of Section 28-302 of the Code. Therefore, the arrest was authorized by the statute.

As plaintiff was properly arrested by lawful authority, his cause of action for false imprisonment cannot be maintained and must fail. *Bushardt v. United Investment Co.,* 121 S. C. 324, 113 S. E. 637, 35 A. L. R. 637.

The remaining question relates to the refusal of the trial Judge to direct a verdict on the cause of action for malicious prosecution.

"In general, to authorize the maintenance of an action for malicious prosecution, the following elements must be shown: (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by or at the instance of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of injury or damage as a result of the action or prosecutions complained of." 34 Am. Jur., Malicious Prosecution, Section 6, p. 706.

Defendant contends the only reasonable inference to be drawn from the testimony is that plaintiff failed to carry the burden of proving want of probable cause, malice, either express or implied, or legal termination of the prosecution.

If plaintiff fails to show that the prosecution was instituted maliciously, without probable cause, and that it was terminated in his favor, then defendant must be absolved from liability in an action for malicious prosecution. *China v. Seaboard Air Line Ry.,* 107 S. C. 179, 92 S. E. 335; *Elletson v. Dixie Home Stores,* 231 S. C. 565, 99 S. E. (2d) 384; *Margolis v. Telech,* 239 S. C. 232, 122 S. E. (2d) 417.

"* * * While actions for malicious prosecution may be maintained in the courts, they have never been regarded with favor and are not encouraged as it is in the interest of good order that criminals be brought to justice; and it is generally held that the prosecutor is free from damage if there be probable cause ·of the accusation made, the burden being upon the plaintiff to show the absence of probable cause as a part of the cause of action. *Fulmer v. Harmon,* 3 Strob. 576; *Hogg v. Pinckney,* 16 S. C. 387, see also, 6 South Carolina Law Quarterly 375-376.

"By probable cause is meant the extent of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor that the person charged was guilty of a crime for which he has been charged, and only those facts and circumstances which were or should have been known to the prosecutor at the time he instituted the prosecution should be considered. *Brown v. Bailey,* 215 S. C. 175, 54 S. E. (2d) 769; *China v. Seaboard Air Line Ry.,* 107 S. C. 179, 92 S. E. 335." *Elletson v. Dixie Home Stores, supra,* 231 S. C. 565, 99 S. E. (2d) 384.

. After the warrant was procurred by defendant, an indictment was prepared and presented to the Grand Jury which returned a "No Bill." Thereafter defendant procured an additional warrant based upon the same facts and the Grand Jury again entered a "No Bill."

Defendant testified after the Grand Jury entered a "No Bill" on the first indictment, that he discussed the matter with the Circuit Solicitor, who advised him to take out another warrant and acting upon such advice, the second warrant was procured. The Circuit Solicitor, J. M. Long, Jr., testified to the same effect.

As a general rule, advice of a prosecuting attorney may constitute a defense to an action for malicious prosecution, providing that the advice is sought in good faith and received after a full and complete disclosure of all material facts. See 10 A. L. R. (2d) 1215.

The evidence is undisputed that the Solicitor was fully cognizant of all material facts bearing on the case, he having prepared both indictments and submitted them to the Grand Jury. It is uncontroverted that the defendant acted upon the advice of the Solicitor, who was aware of all the material facts. Plaintiff's action for malicious prosecution must, therefore, fail as the evidence will support no finding other than that defendant had probable cause.

We see no merit in plaintiff's position relative to the third cause of action. Section 28-457 of the Code declares that every vehicle, boat, animal and firearm used in the hunting of deer at night shall be forfeited to the State and the duty is placed upon the peace officer to confiscate such property and deliver it to the Director of the Division of Game or his agent. There is no testimony that defendant exceeded his authority or did anything other than that required of him by the Statute. His detention of the car under the circumstances was a part of his duties as Game Warden.

For the foregoing reasons, we are of opinion that the judgment and verdict appealed from should be reversed and judgment entered for the defendant; and it is so ordered. Reversed.

Moss, Lewis, Bussey and Brailsford, JJ., concur.